UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY J. SMITH, #482352,

      Petitioner,                            Civil Action No. 18-CV-10995

vs.                                     HON. BERNARD A. FRIEDMAN

ERICK BALCARCEL,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A
WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

        This matter is before the Court on petitioner Bobby J. Smith's petition for a writ of habeas corpus. Petitioner challenges his convictions for second-degree murder, Mich. Comp. Laws § 750.317; sixteen counts of assault with intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony (second offense), Mich. Comp. Laws § 750.227b. Petitioner raises nine claims for relief. Respondent has filed an answer arguing that one claim is unexhausted, several claims are procedurally defaulted, and all claims are meritless. The Court shall deny the petition for the following reasons.

        The Michigan Court of Appeals summarized the facts underlying petitioner's convictions as follows:

> Defendant's convictions stem from two incidents that occurred in the late evening hours of August 27, 2011, and the early morning hours of August 28, 2011, near the intersection of McGraw Street and Grand River Avenue in Detroit. On the evening of August 27, 2011, a group had gathered in that area to watch illegal drag racing, including Hussein Alwaily and several of his friends. While crossing McGraw

Street, Alwaily and his friends got into a verbal altercation with defendant, who was driving an intoxicated female friend home in her vehicle.  During the verbal confrontation, defendant exited the vehicle and fired several gunshots in the vicinity of Alwaily and his friends. No one was injured at that time.

Later the same evening, Alwaily and his friends were speaking with several people in front of the National Guard Armory, located in the same area, as they waited for the races to begin.  Unbeknownst to Alwaily, the people with whom they were speaking were undercover Detroit Police and Wayne County Sheriff's Officers.  Approximately 10 plain-clothed officers were on an assignment in the area to investigate drag racing and possible narcotics activity.  As Alwaily and some of his friends, along with all 10 undercover officers (and a crowd of other people) sat on concrete barriers outside the Armory or milled about on the sidewalk in front of the barriers, shots rang out and began striking the concrete barriers.  Alwaily was struck with a bullet and ultimately died from the gunshot wound. A Wayne County Sheriff's Office Deputy was also struck and injured by a bullet. Witnesses identified defendant as the shooter, and defendant was seen on video surveillance of a nearby liquor store leaving a handgun with the store owner around the time of the shooting.

*People v. Smith*, No. 310436, 2014 WL 783518, at *1 (Mich. Ct. App. Feb. 25, 2014).

Petitioner was convicted by a Wayne County Circuit Court jury.  He was sentenced as a second habitual offender as follows: "60-100 years' imprisonment for the second-degree murder conviction, to be served concurrently with 10-15 years for each assault with intent to do great bodily harm conviction, and 4-7½ years for the felon in possession conviction and consecutive to 5 years for the felony firearm conviction."  *Id.*

Petitioner filed an appeal as of right in the Michigan Court of Appeals.  The court of appeals affirmed petitioner's convictions but remanded the case for resentencing, finding that the trial court's articulated basis for an upward departure was incomplete.  *Id.*  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied.  *See People v. Smith*, 496 Mich. 867 (2014).

2

On October 6, 2014, the trial court resentenced petitioner to 50 to 100 years' imprisonment for the second-degree murder conviction and maintained its original sentences for the remaining convictions. *See People v. Smith*, No. 324537, 2016 WL 1038056, at *1 (Mich. Ct. App. Mar. 15, 2016). Petitioner filed an appeal in the Michigan Court of Appeals asserting ineffective assistance of trial and appellate counsel. The Michigan Court of Appeals affirmed but remanded to the trial court for the limited task of correcting clerical errors in the judgment of sentence. *Id.* The Michigan Supreme Court denied leave to appeal. *See People v. Smith*, 500 Mich. 867 (Mich. 2016).

In 2017, petitioner filed a motion for relief from judgment in the trial court raising ineffective assistance of trial and appellate counsel claims. The trial court denied the motion. *See* docket entry 14-16, PageID.1744-47. The Michigan Court of Appeals denied leave to appeal. *See People v. Smith*, No. 340766 (Mich. Ct. App. 2017). The Michigan Supreme Court did not accept petitioner's application for leave to appeal because it was filed beyond the 56-day appeal period. *See* docket entry 14-17, PageID.1748.

Petitioner then filed the instant habeas corpus petition seeking relief on the following grounds:

> **GROUND ONE:** Choice of counsel. The morning of February 13, 2012, Adam Wolak, whom Mr. Smith had retained to represent him in the case, moved to withdraw as counsel and requested an adjournment, explaining that Mr. Smith had retained another attorney and that there had been a "strained" relationship between him and his client.
>
> \* \* \*
>
> **GROUND TWO:** Confrontation Clause. Dr. Lokman Sung was permitted to testify at trial and relay the contents of the autopsy report written by Dr. Somerset, who did perform the autopsy. In so testifying, Dr. Sung relayed the impressions and opinions Dr. Somerset had reached upon analyzing Hussein's body.
>
> \* \* \*
>
> **GROUND THREE:** Accomplice Jury Instruction. While the trial court instructed the jury on the general criteria for judging witness

3

credibility, the court failed to give any specific cautionary instructions concerning the unreliability of accomplice testimony with regards to William Hansard.

\*     \*     \*

**GROUND FOUR:** Coerced Jury Verdict. The judge's comments reveal a clear intent to get a verdict that day without having to recommence deliberations on the following Tuesday, after the holiday weekend. The judge clearly warned the jury that if a verdict were not reached by the end of the day, it would have to return four days later, therefore rushing a verdict.

\*     \*     \*

**GROUND FIVE:** Prosecutorial Misconduct. During cross-examination the prosecutor pressed [Smith] into saying whether several prosecution witnesses, including the complainant, had told the truth when they testified. Also the prosecutor misstated and misrepresented the evidence presented.

\*     \*     \*

**GROUND SIX:** Fifth Amendment. [Smith] was visited by his parole officer to serve parole violation papers. The parole officer used a statement in regards to being violated as a statement of guilt.

\*     \*     \*

**GROUND SEVEN:** Sufficiency of the Evidence. In determining [Smith's] guilt, evidence was viewed in the light most favorable to the prosecution not as a whole when making sure each element for each crime fit beyond a reasonable doubt.

\*     \*     \*

**GROUND EIGHT:** Ineffective Assistance of Counsel. Defense counsel failed to object to the admission of prejudicial testimonial hearsay in the form of the contents of an autopsy report written by a witness the defense had no opportunity to confront. Moreover, defense counsel failed to secure a very important jury instruction informing the jurors that under the law, they must view the credibility of the key prosecution witness[es] with very heightened scrutiny. Finally, defense counsel did not take any action to keep the prosecutor from committing two very damaging forms of misconduct.

\*     \*     \*

**GROUND NINE:** Ineffective Assistance of Trial and Appellate Counsel. Trial counsel failed to meet his investigative duty, even admitting that he may "not be fully prepared." Failure to call experts cannot amount to a valid strategic reason and was ineffective. Appellate counsel failed to move for a[n] evidentiary hearing to expand the record on trial counsel's ineffectiveness even when requested to do so in writing several times an[d] failing to file [Smith's] paper motion for a *Ginther* hearing was ineffective. Also

> failure to secure medical examiner as a witness, by allowing the court
> to unlawfully deem him unavailable.

Petition at 4-20 (citations omitted).

Respondent argues that several of petitioner's claims are procedurally defaulted. Under the doctrine of procedural default, a federal court generally may not review claims that a habeas petitioner has defaulted in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But the procedural default doctrine is not jurisdictional and the Court may bypass this question where proceeding directly to the merits is more efficient. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority . . . , if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). The Court finds that proceeding directly to the merits is more efficient with respect to all but petitioner's ninth claim for relief and will address the procedural-bar question for the ninth claim.

This habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief,

> a prisoner who challenges (in a federal habeas court) a matter "adjudicated on the merits in State court" [must] show that the relevant state court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559

U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## I. Right to Counsel of Choice Claim

On the day trial was to begin, petitioner's attorney moved to withdraw because he learned just a day or two earlier that petitioner had retained a new attorney.  The trial court denied the request because petitioner's attorney stated that he was prepared for trial and the trial court wanted to avoid a delay.  Petitioner maintains that the trial court's decision violated his right to retain counsel of his choice.

The Michigan Court of Appeals found no error in the trial court's decision, stating, in relevant part:

> [T]he right to counsel of choice is not absolute . . . . "A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *People v. Krysztopaniec*, 170 Mich. App. 588, 598; 429 N.W.2d 828 (1988).
>
> Furthermore, a trial should not be adjourned except for good cause shown. *People v. Sekoian*, 169 Mich.App 609, 613; 426 NW2d 412 (1988).  When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the

defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. *Akins*, 259 Mich. App. at 557; *People v. Echavarria*, 233 Mich.App 356, 369; 592 NW2d 737 (1999).

Defendant retained counsel for purposes of his trial. Defendant was arraigned in the circuit court on October 3, 2011, and on that date, trial was set for February 13, 2012. During the course of all lower court pre-trial proceedings, there was no indication that defendant and his retained counsel were experiencing any difficulties. It was only on the first scheduled date of trial, Monday, February 13, 2012, when a jury pool was already assembled, and witnesses were present, that defense counsel stated that he had been contacted by another attorney over the weekend and that defendant would like to hire a new attorney . . . . [W]e are satisfied that the trial court did not abuse its discretion in denying defendant's motion for an adjournment for the purpose of hiring new counsel.

Defendant was asserting a constitutional right, satisfying factor (1) set forth [above]. However, while defense counsel indicated that his and defendant's relationship was "strained," there was no legitimate dispute between the two identified under factor (2). Defendant has also failed to specify any legitimate dispute in his appeal brief. Defendant was negligent in asserting his right under factor (3). The pre-trial procedures continued, without defendant having written any letter to the court or defense counsel having moved to withdraw until the very day of trial. Had defendant and defense counsel's relationship been strained to the point where withdrawal was necessary, the issue could have been addressed at any point prior to trial.

As to factor (4), the trial court found that defendant was engaging in a delay tactic. Though defendant had no history of attempting to delay the case, given the timing of the request and the lack of allegation of a specific fundamental difference between the two, we cannot conclude that the trial court's conclusion was erroneous. Finally, defendant has demonstrated no prejudice resulting from the trial court's decision under factor (5). Defendant has identified nothing that his requested substitute attorney would have done differently. While defense counsel also pointed out that defendant's family had now also obtained funds to hire a video expert to review the liquor store video evidence, the only issue with respect to the video surveillance was the time displayed on it showing when defendant arrived at and left from the party store. The gun used to kill

7

Alwaily was never recovered. Thus, it is of questionable value whether the video showed defendant leaving a gun at the party store before or after the killing occurred. The gun defendant left at the store was never identified as the one used to kill Alwaily and defendant admitted to having a gun in his possession at some point on the night of the shooting. The trial court did not abuse its discretion in denying defendant's day of trial motion to adjourn for the purpose of retaining new counsel.

*Smith*, 2014 WL 783518, at *2-3.

"[I]n evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (internal quotation marks omitted). Further, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* A defendant is not guaranteed a "meaningful relationship" with his counsel. *See Morris v. Slappy*, 461 U.S. 1, 14 (1983). Therefore, "when a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001).

A criminal defendant may not "stop the criminal justice system in its tracks" by rejecting counsel for no justifiable reason. *Swiger v. Brown*, 86 F. App'x 877, 882 (6th Cir. 2004). The record shows that the trial court carefully considered petitioner's right to counsel. The Michigan Court of Appeals' finding that petitioner raised no justifiable reason for replacement of counsel is reasonable. Relief is denied on this claim.

## II. Confrontation Clause Claim

Petitioner next argues that his right to confrontation was violated by the admission of Dr. Lokman Sung's trial testimony about the victim's autopsy report which was prepared by a

8

different medical examiner, Dr. Somerset.

The Michigan Court of Appeals held that the trial court erred in admitting Dr. Sung's hearsay testimony because the prosecutor did not assert that Dr. Somerset was unavailable and petitioner did not have an opportunity to cross-examine Dr. Somerset.[1] *See Smith*, 2014 WL 783518, at *4.  But the state court denied relief because the error was harmless.[2]

On federal habeas review, relief may not be granted "based on trial error unless [a petitioner] can establish that it resulted in actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).  Relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict."  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted).

Further, a state court's decision that an error was harmless constitutes an adjudication

---

[1]  Several federal courts have concluded there is no clearly established Supreme Court precedent establishing that autopsy reports are testimonial in nature.  *See e.g.  Mitchell v. Kelly*, 520 F. App'x 329, 331 (6th Cir. 2013) ("[T]he decision . . . [that an autopsy report was admissible as a nontestimonial business record] was not an unreasonable application of *Crawford* given the lack of Supreme Court precedent establishing that an autopsy report is testimonial."); *see also Hensley v. Roden*, 755 F.3d 724, 735 (1st Cir. 2014) (holding that Supreme Court has not clearly established that autopsy reports are testimonial); *McNeiece v. Lattimore*, 501 F. App'x 634, 636 (9th Cir.2012) (holding that because *Crawford* did not clearly establish that autopsy reports are testimonial, the state court's decision that portions of an autopsy report were admissible was not contrary to Supreme Court precedent).  However, the Court need not address this issue.  Even assuming the autopsy report was testimonial, the admission of Dr. Sung's testimony was harmless.

[2]  The Michigan Court of Appeals reviewed the Confrontation Clause claim for plain error because the defense did not object to Dr. Sung's testimony at trial.  *Smith*, 2014 WL 783518, at *3.  The plain error standard applied by Michigan courts is the "functional[] equivalent" of the harmless error standard applied in federal habeas cases.  *Brown v. Burton*, No. 18-2145, 2019 WL 4865392, at *2 (6th Cir. Apr. 9, 2019) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

"on the merits" to which the highly deferential AEDPA standard applies. *See Davis v. Ayala*, 576 U.S. 257, 269 (2015). Thus, this Court may not grant relief unless the state court's "harmlessness determination itself was unreasonable." *Id.* (emphasis and internal quotation marks omitted); *see also Langford v. Warden*, 665 F. App'x 388, 389 (6th Cir. 2016) (finding that a court on collateral review must "give a heightened degree of deference to the state court's review of a harmless error decision").

The cause and manner of Alwaily's death was not at issue in this case. Petitioner's defense was that he was not the shooter. The Court sees nothing in Dr. Sung's trial testimony which would call into question the Michigan Court of Appeals' determination that any error was harmless. Relief is denied on this claim.

### III. Accomplice Jury Instruction Claim

Petitioner next claims that he was denied his right to a properly instructed jury because the trial court failed to give any of three accomplice jury instructions (CJI2d 5.4, 5.5, or 5.6) with respect to witness William Hansard. The Michigan Court of Appeals reviewed and rejected this jury instruction claim under a plain error standard because counsel expressed approval of the jury instructions at trial. *Smith*, 2014 WL 783518, at *4. AEDPA deference applies to any underlying plain-error analysis of a defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

The Michigan Court of Appeals held that none of the instructions cited by petitioner were supported by the evidence. First, the state court held that CJI2d 5.4, which is to be given "where the witness has admitted his guilt or has been convicted of the crime, or where the evidence clearly indicates his complicity" was not warranted in this case. *Smith*, 2014 WL 783518, at *5. Hanserd did not admit to being petitioner's accomplice, nor was he convicted of any crime associated

with the shootings.  Thus, the court of appeals concluded, this instruction did not apply.  *Id.* at *6.
Next, the Michigan Court of Appeals held that CJI2d 5.5 (the disputed accomplice instruction) and
CJI2d 5.6 (general cautionary instruction for accomplice testimony) were not appropriate because
petitioner offered no testimony "that he and Hansard planned to participate in the first or second
shooting or that the same were discussed."  *Id.*  Hanserd also did not testify that he had any
knowledge of the first or second shooting before they occurred, or had any reason to suspect a second
shooting would occur.  *Id.*  Based upon this testimony, the Michigan Court of Appeals held no
testimony or evidence warranted the accomplice instructions found in CJI2d 5.5 or  5.6.  *Id.* at *7.

      The Supreme Court has "repeatedly held that a state court's interpretation of state law
. . . binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  A
federal habeas court may review a state court's decision regarding an omitted jury instruction only
insofar as the omitted instruction "so infected the entire trial that the resulting conviction violates due
process."  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The Sixth Circuit considered and rejected a
similar claim in *Young v. Trombley*, 435 F. App'x 499 (6th Cir. 2011).  In *Young*, the Sixth Circuit
held that the failure to give a specific accomplice instruction does not violate a defendant's right to
a properly instructed jury where the totality of the general credibility instruction "both informs the
jury regarding credibility and alerts the jury to what is properly considered when determining
credibility."  *Id.* at 504 (internal quotation marks omitted).  The instructions regarding witness
credibility in this case were nearly identical to those given in *Young*.

      Petitioner fails to show that the state court's denial of his jury instruction claim was
contrary to, or an unreasonable application of, Supreme Court precedent.  The instructions, taken as
a whole, did not render the trial fundamentally unfair.  *Estelle*, 502 U.S. at 72 ("It is well established
that the instruction may not be judged in artificial isolation, but must be considered in the context of

the instructions as a whole and the trial record.") (internal quotation marks and citation omitted).

Habeas relief is not warranted on this claim.

### IV. Coerced Jury Verdict Claim

Petitioner argues that the trial court coerced the jurors' verdict by informing them that if they did not reach a verdict by the end of the day (a Friday), they would have to return for deliberations on Tuesday of the following week. The jury began its deliberations at approximately 3:00 p.m. on Thursday, February 16, 2012, and were excused for the day at approximately 4:15 p.m. *See* docket entry 14-8, PageID.1044. The following day, after replaying a video at the jury's request, the trial judge explained to the jury:

> Just to give you an idea where we are with this, if you have not reached a decision by 12:30, quarter to one, thereabouts, have the deputy excuse you for your lunch break for at least an hour, they will give you instructions and so forth, and then you will return after that lunch break and continue on until, again, fourish. If you have not reached a decision at that time, we would return next week, but on Tuesday. The courts are closed on Monday. So if you have not reached a decision by the end of the day today, you return Tuesday at 9:00. You may be excused.

Docket entry 14-9, PageID.1055-56. The jury returned its verdict at approximately 3:10 p.m. on Friday, February 17, 2012. *See id.* at PageID.1057-58.

The Michigan Court of Appeals found "nothing even marginally coercive in the trial court's telling the jury what the deliberation schedule would be." *Smith*, 2014 WL 783518, at *8. Instead, the trial court was simply informing the jury that because the court was closed on Monday, they would reconvene on Tuesday, and "[t]here was nothing in the trial court's language suggesting that the jury must or should reach a verdict by the end of the day on Friday." *Id.*

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfeld v. Phelps*, 484 U.S. 231, 241 (1988). On habeas review, "the question is

12

not whether this Court would find the trial court's actions coercive; rather, the question is whether the state courts were reasonable in finding no coercion." *Early v. Packer*, 537 U.S. 3, 11 (2002). A trial court's explanation of the schedule for the remainder of deliberations is not coercive. *See United States v. Ratliff*, 63 F. App'x 192, 195 (6th Cir. 2003); *United States v. Sciarrotta*, No. 96-1592, 1997 WL 778402, at *6 (6th Cir. 1997) (finding "patently without merit" a claim that a trial court's discussion of the trial schedule coerced the jury into reaching a verdict). As the Michigan Court of Appeals observed, nothing in the trial court's statement suggested that the jury had to reach a verdict at all, or had to do so within a specified period of time. The court merely informed the jury of the upcoming schedule. The Court denies petitioner's jury coercion claim.

### V. Prosecutorial Misconduct Claim

In his fifth claim, petitioner alleges that the prosecutor denied him a fair trial by improperly asking him to comment on the credibility of certain prosecution witnesses and arguing facts not in evidence during closing argument.

A prosecutor's improper comments violate a criminal defendant's constitutional rights if they "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id*. To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts more leeway . . . in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (internal quotation marks omitted) (alteration in original). "That leeway increases in assessing a state

13

court's ruling under AEDPA," because the court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites . . . other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (internal quotation marks omitted).

Petitioner points to two alleged instances of prosecutorial misconduct. First, he argues that the prosecutor improperly asked him to comment on the credibility of prosecution witnesses. The prosecutor several times asked petitioner whether  prosecution witnesses whose testimony conflicted with petitioner's were lying, incorrect, or untruthful. *See* docket entry 14-8, PageID.951-54.

On appeal, the Michigan Court of Appeals held that the prosecutor's questions were improper. *Smith*, 2014 WL 783518, at *9. Even so, the court of appeals denied relief because it found the error harmless:

> Of the improper questioning identified, most concerned how defendant was holding the gun during the first shooting. Defendant's answers in this case reiterated that during the first shooting, he fired the gun in the air. There is no indication that his answers that the witnesses who stated otherwise were inaccurate affected the outcome of the proceedings. Similarly, there is no indication that defendant's testimony that Mark was untruthful when he told the police that when defendant came into the store requesting bullets he had said that someone shot the window out of his sister's car and that he had shot back, affected the outcome of the proceedings in any way. It is undisputed that after he entered the store requesting bullets, defendant did not obtain the bullets and, in fact, left the gun at the store . . . .

*Id.* at *9.

Under *Darden*, the state court's decision was not unreasonable. It is generally improper for a prosecutor to ask a witness to comment on the credibility of other witnesses, as such matters are left to the jury. *See United States v. Dickens*, 438 F. App'x 364, 372 (6th Cir. 2011). But

14

the prosecutor's conduct did not deprive petitioner of a fundamentally fair trial. The jury was well aware of the conflicting testimony between petitioner and the prosecution witnesses. It would not have been surprising or prejudicial for the jury to hear petitioner testify that testimony conflicting with his own was incorrect. Finally, the trial court instructed the jury as to the central role juror's play in determining witness credibility. *See* docket entry 14-8, PageID.1017-19.

Second, petitioner claims that the prosecutor improperly argued facts not in evidence during closing argument. First, the prosecutor commented that Deputy Landrum was struck by a bullet that traveled from "left to right through and through" his right leg. *Smith*, 2014 WL 783518 at *9. However, there was no testimony that Landrum was hit from left to right or that his injury was "through and through." On appeal, the court of appeals held that the error was harmless, citing Landrum's testimony that the shots seemed to be coming from his left, which was supported by consistent statements from several other witnesses. The appellate court added that "[t]here was no question that Landrum was, in fact, shot in the thigh, and the extent of the injury (i.e., whether the bullet remained in his leg or exited) was immaterial to the jury's finding defendant guilty of assault with intent as to Landrum. *Id.* at *10.

Further, the trial court instructed the jurors at the beginning of the trial and in its concluding charge to the jury that the attorneys' arguments did not constitute evidence and that the jurors should base their verdict only on admissible evidence. *See* docket entry 14-5, PageID.327-29; docket entry 14-8, PageID.1017-19. Juries are presumed to follow a trial court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). A court's instruction to a jury that the attorneys' arguments are not evidence can sometimes "cure improprieties in closing argument." *United States v. Carroll*, 26 F.3d 1380, 1389 n. 12 (6th Cir. 1994). Petitioner fails to show that the prosecutor's statements deprived him of a fundamentally fair trial or that the state court's decision was

unreasonable under the circumstances.  For these reasons, petitioner is not entitled to relief on his prosecutorial misconduct claim.

### VI. Fifth Amendment Claim

Next, petitioner claims that his Fifth Amendment rights were violated when his parole officer interrogated him while he was in jail without first informing him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Petitioner's parole agent, Tracy Swan, visited petitioner while he was incarcerated pursuant to the crimes at issue here, in order to serve him with parole violation charges.  During a discussion outside of the jury's presence, the court advised Swan not to tell the jury that she was a parole officer or that she was serving petitioner with parole violation charges.  *See* docket entry 14-6, PageID.671-72.  At trial, Swan testified that she was at the jail to give some papers to petitioner and that he stated "I'm fucked, Ms. Swan, aren't I?"  *Id*. at 675.  In compliance with the court's directive, Swan did not provide any other context for petitioner's statement.  Petitioner maintains that admission of his one-sentence statement violated his Fifth Amendment rights because he was not advised of his *Miranda* rights prior to its utterance.

The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination.  In *Miranda*, the Supreme Court held that, to protect a suspect's Fifth Amendment rights, an individual who has been taken into custody or otherwise deprived of his freedom and is questioned must be advised, prior to any questioning, "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him."  384 U.S. at 479.

The Michigan Court of Appeals found no Fifth Amendment violation in this case:

According to defendant's parole agent, Ms. Swan, when she went to

serve defendant with papers in jail, he said to her, "I'm fucked, Ms. Swan, aren't I?" The statement was introduced at trial. Defendant does not dispute the nature of the statement. While defendant was undoubtedly in jail when this statement was made, the statement was not made during a custodial interrogation. In *People v. Elliott*, 494 Mich. 292, 306; 833 NW2d 284 (2013), a parolee was incarcerated for a parole violation when his parole officer appeared at the jail to serve him with notices of his parole violations. While there, the defendant gave incriminating statements to the parole officer about a robbery the defendant had committed. The defendant was eventually charged with the robbery and defendant sought to have the parole officer's statements suppressed arguing that said statements were improperly obtained without the benefit of *Miranda* warnings. Our Supreme Court found that the statements were properly admitted. It opined:

> 'Custodial' means more than just the normal restrictions that exist as a result of the incarceration. Indeed, the United States Supreme Court has held that imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*. Instead, whether incarceration constitutes custody for *Miranda* purposes . . . depends upon whether it exerts the coercive pressure that Miranda was designed to guard against—the danger of coercion [that] results from the interaction of custody and official interrogation. (internal citations omitted).

The *Elliott* Court further determined that a reasonable person in defendant's position, i.e., a parolee, would be aware that a parole officer is acting independently of the police who placed him in custody and has no control over the jail, its staff, or the individuals incarcerated there. The parolee would know, then, that his "freedom of movement" was not "curtailed" during a meeting with the parole agent and he would have felt free to terminate the interview and leave.

As in *Elliott*, the defendant here was a parolee being held in jail and was well aware that the parole agent was separate from the police or jail personnel. There is no reason to conclude that defendant was being subject to a custodial interrogation when he made the challenged statement. And, as in *Elliot*, there is no evidence of coercion or any other manner of psychological intimidation. *Id.* at 311. The parole officer visited defendant as part of her job as a parole officer and it appears that defendant volunteered this statement when he saw Ms. Swan. Defendant cannot show inherently coercive pressures that caused him to discuss anything with the parole officer,

17

let alone make the challenged statement.  Moreover, as indicated by defendant, the statement is not necessarily an admission of guilt.  The meaning of the statement was left to the province of the jury.  The admission of the statement thus raises no Fifth Amendment implications.

*Smith*, 2014 WL 783518, at *13.

The court of appeals' holding that petitioner was not subjected to a custodial interrogation is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  First, the state court's custody determination was not unreasonable.  Custody is "a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012).  "[I]mprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." *Id.* at 511.  Petitioner fails to raise any facts that would render the state court's custody decision unreasonable.  The Supreme Court in *Fields* cited various factors as relevant to the custody determination, many of which support the state court's finding in this case.  Such factors include that petitioner's entire conversation with Swan lasted only about twenty minutes, that petitioner was not physically restrained, and that there is no indication of coercion by Swan.  *See also Schreane v. Ebbert*, 864 F.3d 446, 453 (6th Cir. 2017) (citing *Fields*, 565 U.S. at 509).  In addition, "interrogation" under *Miranda* simply means "express questioning" or "its functional equivalent" by government agents while the suspect is in custody.  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).  Even if petitioner was in custody, there is no indication that Swan "interrogated" him.

Finally, even assuming admission of the statement was erroneous, a Fifth Amendment violation is subject to harmless error analysis.  Habeas relief may be granted only if a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted).  "When a federal judge

18

in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). As noted by the court of appeals, petitioner's statement was not necessarily an admission of guilt. For example, it just as easily could have been a pronouncement that he believed he was being wrongfully accused. The record thus supports a finding that any error was harmless.

### VII. Sufficiency of the Evidence Claim

Next, petitioner argues that the evidence presented at trial was insufficient to establish his identity as the shooter. On habeas review, a sufficiency of evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Second, if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (emphasis in original).

The Michigan Court of Appeals denied petitioner's challenge as to the sufficiency of the evidence:

> Defendant's challenge to the sufficiency of the evidence is based on his assertion that witnesses presented conflicting stories of what occurred on the night of August 27, 2011, and the morning of August 28, 2011, and a miscarriage of justice will occur if his conviction is allowed to stand based on conflicting stories. Specifically, defendant contends that while Hansard testified that he saw defendant shooting a second time into the crowd, Mortadah Algarawi testified that the

19

shooter that caused Alwaily's injuries was driving by in a van and had dreadlocks. Defendant disregards, however, that Wayne County Deputy Landrum, who was also shot, testified that immediately prior to being shot, he heard gunshots coming from his left, in the area of the party store, where Hansard testified that he had dropped defendant off and the area from where he saw defendant begin shooting. Several other witnesses testified that they, too, heard gunshots coming from that area. And, the jury was free to believe Landrum, Hansard, and any other witness, and was free to disbelieve Algarawi. "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v. Unger*, 278 Mich.App 210, 222; 749 NW2d 272 (2008). Testimony was also presented placing defendant in the area prior to the shooting, having a confrontation with Alwaily and his friends and shooting in their direction ten to fifteen minutes prior to the second shooting. In addition, Hansard testified to seeing defendant shoot the second time and according to Detective Sullivan, the party store video showed defendant exiting Hansard's van and walk down Grand River out of sight. Sufficient circumstantial evidence was thus presented to convict defendant.

*Smith*, 2014 WL 783518, at *14.

In support of his sufficiency of evidence argument, petitioner highlights portions of the trial testimony which, he believes, bolstered his defense. But petitioner ignores the fact that the jury was free to believe Landrum and Hansard and to disbelieve his defense. In light of the considerable testimony implicating petitioner, a reasonable jury could have concluded that petitioner was the shooter. The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner is thus not entitled to relief on this claim.

### VIII. Ineffective Assistance of Trial Counsel Claim

In his eighth claim, petitioner argues the he received ineffective assistance of trial counsel. Specifically, petitioner claims that counsel was ineffective because he failed to (i) object to the admission of Dr. Sung's testimony, (ii) request an accomplice jury instruction, (iii) object to the prosecutor's misconduct, and (iv) petition the court for funds to secure an expert witness.

20

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted). When a habeas petitioner raises an ineffective assistance of counsel claim, the bar for relief is even higher because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals' denial of petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, *Strickland.* First, the record supports the state court's conclusion that petitioner failed to establish prejudice resulting from the admission of Dr. Sung's testimony. *See Smith*, 2014 WL 783518, at *11. Petitioner's defense rested on the identity of the shooter, not on the nature of Alwaily's injuries. Under the circumstances, the state court's conclusions regarding the absence of prejudice was reasonable.

21

Second, the Michigan Court of Appeals found that counsel was not ineffective in failing to request an accomplice instruction because the instruction was not supported by the record. *Id.* This Court defers to the state court's application of state law. *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000). Further, this Court finds that counsel cannot be found ineffective for failing to request an instruction unsupported by the evidence. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Finally, petitioner cannot satisfy *Strickland*'s prejudice prong for this claim because, as already discussed, any misconduct by the prosecutor was harmless.

Third, petitioner argues that his trial attorney was ineffective in failing to petition the court for funds to secure an expert witness. The prosecution presented expert testimony that the time shown on the liquor store's videotape was incorrect. Petitioner maintains that the time shown on the videotape was correct and that he needed an expert to refute the prosecutor's expert testimony. The Michigan Court of Appeals denied this claim for two reasons. First, because petitioner did not declare indigent status and defense counsel was retained, he was not entitled to a court-appointed expert witness under state law. *See Smith*, 2014 WL 783518, at *12. Second, petitioner failed to offer any evidence that another expert would have provided testimony contrary to that provided by the prosecution's expert. *Id.* Petitioner similarly fails to present evidence in his habeas application that another expert would have testified favorably for the defense. A claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir.2006). "In the absence of any evidence showing that [an uncalled witness] would have offered specific favorable testimony, [a petitioner] cannot show prejudice from counsel's" failure to present that witness. *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005).

For these reasons, habeas relief is denied on petitioner's ineffective assistance of trial

counsel claim.

### IX. Ineffective Assistance of Trial and Appellate Counsel Claim

In his ninth and final habeas claim, petitioner alleges that trial counsel was ineffective for failing to call a firearms expert and failing to secure the presence of a witness who was deemed unavailable. He also alleges that appellate counsel was ineffective for not filing a motion for evidentiary hearing on his ineffective assistance of trial counsel claim. Respondent argues that these claims are procedurally defaulted. The Court finds that this ninth claim is unexhausted and, because no avenue remains for state court exhaustion of this claim, it is procedurally defaulted.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. Section 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Petitioner bears the burden of showing that he exhausted all available state court remedies. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987). If a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). However, a petitioner cannot present unexhausted claims unless he can show cause as to his failure to present the claims in state court, as well as actual prejudice to his defense at trial or on appeal. *Id.* at 1196.

Petitioner has not fairly presented his ninth claim to the Michigan Supreme Court. Petitioner raised these same challenges in his motion for relief from judgment. The Michigan Court of Appeals denied petitioner's application for leave to appeal. *See Smith*, No. 340766. Petitioner

then attempted to file an application for leave to appeal in the Michigan Supreme Court, but the pleadings were returned without filing because they were untimely. *See* docket entry 14-17, PageID.1748. This claim, therefore, is unexhausted.

Petitioner can no longer exhaust these claims because he already filed a motion for relief from judgment in the state trial court. Petitioner does not argue that his claims fall within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court. Further, to the extent such an argument is raised, ineffective assistance of appellate counsel does not excuse petitioner's failure to fully present this claim on collateral review. *Hannah*, 49 F.3d at 1196.

Thus, his ninth claim is procedurally defaulted and barred from review unless petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court has tied this miscarriage of justice exception to a petitioner's actual innocence. *Id.* To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Here, petitioner fails to present any evidence in light of which no reasonable juror would have found him guilty. Therefore, this final claim for relief is denied.

Accordingly,

IT IS ORDERED that the petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has not made a substantial showing of the denial of any of his constitutional rights. *See* Fed. R. App. P. 22; 28 U.S.C. § 2253.

IT IS FURTHER ORDERED that petitioner is granted leave to proceed in forma pauperis on appeal because an appeal could be taken in good faith. *See* Fed. R. App. P. 24(a).

s/Bernard A. Friedman
Bernard A. Friedman
Dated: February 22, 2021                Senior United States District Judge
Detroit, Michigan

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 22, 2021.

Bobby J. Smith, #482352                s/Johnetta M. Curry-Williams
Earnest C. Brooks Correctional Facility        Case Manager
2500 S. Sheridan Drive
Muskegon Heights, MI 49444

25